UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES, | CASE NO. CR12-47 MJP |
|---|---|
| Plaintiff, | ORDER DENYING DEFENDANT RAMON PALACIOS-RODRIGUEZ'S MOTIONS TO SUPPRESS EVIDENCE OBTAINED ON MARCH 28, 2012 |
| v. | |
| HERMINIO SILVA, et al. | |
| Defendants. | |

This matter comes before the Court on Defendant Ramon Palacios-Rodriguez's motions to suppress evidence obtained on March 28, 2012. (Dkt. No. 584, 662.) Having considered the motions, the government's responses, all related papers, and having heard oral argument on November 30, 2012, the Court DENIES the motions.

**Background**

The government has charged Ramon Palacios-Rodriguez and 26 other individuals with running a large-scale drug trafficking operation ("DTO") in Washington. (Superseding

ORDER DENYING DEFENDANT RAMON
PALACIOS-RODRIGUEZ'S MOTIONS TO
SUPPRESS EVIDENCE OBTAINED ON MARCH
28, 2012- 1

Indictment at 1-2, Dkt. No. 49.) Members of the DTO allegedly sold and distributed drugs, including heroin, cocaine, and methamphetamine. (Id.)

On March 23, 2012, Magistrate Judge Brian A. Tsuchida authorized arrest and search warrants relating to the drug trafficking organization. (Dkt. No. 663-2.) In total, Magistrate Judge Tsuchida authorized 56 search warrants, including one pertaining to a search of Palacios-Rodriguez's residence. (Dkt. Nos. 663-1, 663-2.) The affidavit underlying the search warrants was prepared by and sworn to by DEA Special Agent Lori Miller. (Application for Search Warrant, Affidavit of Lori Miller ("Affidavit"), Dkt. No. 663-4 at 16.) Prior to his arrest, Palacios-Rodriguez lived at 20810 76th Ave., #16, Edmonds, Washington (hereinafter "Edmonds Apartment").

Defendant Palacios-Rodriguez challenges the lawfulness of the warrants authorizing searches of his apartment and vehicles.

The search warrant alleged the following as to Palacios-Rodriguez, his residence and his vehicles :

In March-April 2011, investigators first noticed Palacios-Rodriguez when they used GPS devices to track suspected narcotics deliverers to Palacios-Rodriguez's Edmonds Apartment. (Affidavit at ¶141-42.) On March 28, 2011, investigators observed a man resembling Palacios-Rodriguez standing near a Toyota Camry that had just returned from Chowchilla, California. (Id. at ¶144.) A box was transferred from the Camry to a waiting Cadillac Escalade. (Id.) The man resembling Palacios-Rodriguez got into the Escalade, which drove to the Edmonds Apartment. (Id. at ¶145.) Investigators could not determine if the man resembling Palacios-Rodriguez exited or if the box was removed from the vehicle at the Edmonds Apartment. (Id. at ¶146.)

On April 13, 2011, DEA agents from the Fresno, California field office took photos of a vehicle owned by a co-defendant, which placed Palacios-Rodriguez in Chowchilla, California. The photos showed Palacios-Rodriguez in the company of an individual who investigators believed supplied narcotics to the DTO. (Id. at ¶147.)[1]

On June 29, 2011, investigators observed Palacios-Rodriguez exit his residence and jump-start his Chevy Tahoe using a Nissan Truck. (Id. at ¶150.) Palacios-Rodriguez returned to his home. Later, he drove the Chevy Tahoe to a nearby gas station. (Id. at ¶151.)

On October 28, 2011, investigators intercepted telephone calls between Arturo Ramirez-Santos and another suspected co-conspirator, Mathias Torres-Zanbrano. (Id. at ¶ 365). Torres-Zanbrano asked to exchange "four blacks" for a "hand." (Id.) Investigators believed Torres-Zanbrano wanted to exchange poor quality heroine for better quality drugs. (Id.) That same day, investigators observed Ramirez-Santos, Palacios-Rodriguez, Torres-Zanbrano meet in a vehicle. (Id. at ¶ 152, 366.) After the meeting, Palacios-Rodriguez was dropped off at the Edmonds Apartment. (Id. at ¶ 153.)

On November 3, 2011, Palacios-Rodriguez left his Edmonds Apartment and drove away in a Volkswagen Golf. The Volkswagen Golf is registered to Palacios-Rodriguez. Co-defendant, Herminio Silva, sat in the front passenger seat. Palacios-Rodriguez and Silva met with Pedro Vazquez-Lopez, who drove a white flatbed pick-up truck. (Id. at ¶155.) The Golf then drove to a Lowe's parking lot in Federal Way, Washington. The flatbed truck, driven by Vazquez-Lopez, also parked in the Lowes parking lot. (Id.) While in the Lowe's parking lot, the occupants of the Golf (Silva and Palacios-Rodriguez) and the flatbed truck (Vazquez-Lopez and

---

[1] The Affidavit described portions of Palacios-Rodriguez's return trip to Washington. As described in the subsequent portion of the Order, the Court did not consider these facts surrounding the return trip in determining if probable cause supports the warrant.

companion) did not interact. (Id. at ¶156.) After a period of time, another co-defendant, Alejandro Juarez-Santos, parked next to the flatbed truck and appeared to transfer an object. The Affidavit characterized this transfer as "consistent with a narcotics delivery." (Id. at 157.)

On November 8, 2011, officers observed Palacios-Rodriguez arrive and another defendant, Ramirez-Santos, arrive at a residence, which investigators believed to be a stash house. (Id. at ¶74). Palacios-Rodriguez and Ramirez-Santos then drove to another location where Ramirez-Santos briefly entered the front passenger seat of a Cadillac Escalade. Ramirez-Santos quickly exited the Escalade. The affidavit noted the "meeting was brief and consistent with a narcotics delivery." (Id. at ¶75.)

A month later, investigators recorded a telephone conversation where Alejandro Juarez-Santos asked Palacios-Rodriguez if he could bring that "girl (cocaine) up there right now." Palacios-Rodriguez agreed, explaining "that dude sent me one and a half…he sent it to me in little balls so that the driver wouldn't charge too much." (Id. at ¶161.) The conversation appeared to officers to include a discussion of payment and a need for Juarez-Santos to weigh the substance after delivery. (Id. at ¶162.) The two agreed to meet later that day. (Id.) The affidavit does not indicate if investigators observed a meeting between the two.

In December 2011, investigators observed Palacios-Rodriguez leave his apartment and access the apartment complex's laundry room. (Id. at ¶163.) He then returned to his residence. Two months later, investigators observed Palacios-Rodriguez drive away from his Edmonds Apartment in his Volkswagen Golf. (Id. at ¶164.) The affidavit contains no information regarding where Palacios-Rodriguez went. On March 13, 2012, investigators observed the Volkswagen Golf parked at the Edmonds Apartment. (Id. at ¶165.)

The affidavit also details GPS tracking of the cellular telephone used by Palacios-Rodriguez. On December 2, 2011, agents obtained a federal tracking warrant for cellular telephone number (425) 492-5774 ( "5774"). Investigators connected this number to at least one suspected narcotics transaction. (Id. at 161.) During the 45-day period of tracking, GPS information for the telephone indicated it was in the vicinity of Palacios-Rodriguez's Edmonds Apartment. The phone tracked was the same one used by Palacios-Rodriguez to set up a cocaine delivery with Alejandro Juarez-Santos in early December 2011.

Although the affidavit does not contain subsequent references to Palacios-Rodriguez, his Edmonds Apartment, or his vehicles, it does describe the continuation of the DTO conspiracy. (see e.g. Id. at ¶¶ 33-48, 82-83, 136-39, 217-218, 220-221, 249-250, 286-289, 322-336, 492-94.)

In addition to the specific facts about Palacios-Rodriguez and the other alleged co-conspirators, Special Agent Miller, the affiant, described her knowledge regarding drug investigations. She stated that traffickers of controlled substances "maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value." (Id. at ¶623a.) Further, Special Agent Miller stated such items are generally kept in places drug traffickers believe are secure, such as their "homes, vehicles, storage lockers, and businesses." (Id. at ¶623b.)

<u>Search of Palacios-Rodriguez Residence</u>

On March 28, 2012, law enforcement officers executed a search of the Edmonds Apartment, as part of a multi-state operation. Based on a separate arrest warrant, officers also arrested Palacios-Rodriguez.

//

ORDER DENYING DEFENDANT RAMON PALACIOS-RODRIGUEZ'S MOTIONS TO SUPPRESS EVIDENCE OBTAINED ON MARCH 28, 2012- 5

**Analysis**

Defendant Ramon Palacios-Rodriguez moves to suppress evidence obtained on March 28, 2012 by investigators effectuating the search warrant. (Dkt. No. 584, 662.) Defendant Palacios-Rodriguez argues the warrant lacked probable cause because the affidavit described events more than three months old and was based on stale information. Further, he claims the Affidavit lacked a nexus between the alleged criminal activity and the place to be searched, Palacios-Rodriguez's apartment.

A. <u>Legal Standard</u>

Unreasonable government intrusion into the home is the chief evil against which the Fourth Amendment is directed. <u>Payton v. New York</u>, 445 U.S. 573, 585 (1980). The Fourth Amendment prohibits a general warrant. <u>Andresen v. Maryland</u>, 427 U.S. 463, 480 (1976). In issuing a search warrant, a neutral judge must determine that there is a "fair probability that . . . evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

"Probable cause is determined by looking at the totality of circumstances...." <u>United States v. Nielsen</u>, 371 F.3d 574, 579 (9th Cir. 2004). Under the totality of the circumstances test, a neutral magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 897 (9th Cir. 2011) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). The magistrate is free to draw "reasonable inferences . . . from the material supplied to him by applicants for a warrant." <u>Gates</u>, 462 U.S. at 240. However, "probable cause can[not] be made

out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based." United States v. Ventresca, 380 U.S. 102, 108-09 (1965).

A magistrate judge's finding of probable cause is entitled to deference. Dougherty, 654 F.3d at 897-98. Furthermore, "[i]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 238.

B. Probable Cause

    a. California Stop

As a threshold issue, in determining if probable cause existed for the issuance of the search warrant, the Court does not consider the Affidavit's reference to a Shasta County Sherriff deputy's stop and search of Palacios-Rodriguez's vehicle in April 2011. Under challenge by Palacios-Rodriguez, the government has been unable establish the constitutionality of that stop and search. The Court therefore must presume that the stop and warrantless search were unconstitutional. For purposes of this motion, when an affidavit contains evidence illegally obtained, "[a] reviewing court should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987); U.S. v. Barajas-Avalos, 377 F.3d 1040, 1054-1055 (9th Cir. 2004). The Court therefore, excises paragraphs 148-149 from the Affidavit.

    b. Staleness

Palacios-Rodriguez attacks the search warrant on the theory the alleged criminal activity described in the Affidavit occurred more than than three months before issuance of the warrant. (Df. Brief at 3, Dkt. No. 664.) Palacios-Rodriguez's contention is contrary to Ninth Circuit case law, which requires the Court look to the nature of the criminal activity at issue, not just the last date contained in the affidavit. United States v. Foster, 711 F.2d 871, 878 (9th Cir. 1983). Here, the evidence was not stale because it described a firmly entrenched, widespread, and continuing narcotics trafficking organization.

An affidavit supporting a search warrant must be based on facts "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. Lacey, 119 F.3d 742, 745 (9th Cir. 1997) (quoting Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968)). "The mere lapse of substantial amounts of time is not controlling in a question of staleness." United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988). "The court should also evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought." Foster, 711 F.2d at 878. When an affidavit alleges "the existence of a widespread, firmly entrenched, and ongoing narcotics operation…staleness arguments lose much of their force." United States v. Hernandez–Escarsega, 886 F.2d 1560, 1566 (9th Cir. 1989); see also United States v. Greany, 929 F.2d 523, 525 (9th Cir. 1991) (upholding warrant based on one and one-half to two year old information about marijuana growing operation because it described "an ongoing criminal business of a necessarily long-term nature"); Dozier, 844 F.2d at 707 (upholding warrant based on five and a half month old affidavit because "marijuana cultivation is a long-term crime"); United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) (holding that four-month lapse between crack sale involving defendant in

different location and affidavit was not enough to render information stale where affidavit supported inference that defendant was "more than a one-time drug seller").

In this case, Special Agent Miller's affidavit describes a more than year-long investigation of the DTO. Investigators had collected evidence of Palacios-Rodriguez's long-standing involvement in the alleged conspiracy. Palacios-Rodriguez was observed visiting a suspected stash house, participating in suspected narcotics transactions, traveling to Chowchilla, California with a conspirator where investigators believed the DTO obtained its narcotics supply, and on at least one occasion, arranging for a delivery of cocaine. From this direct evidence comes the inference that Palacios-Rodriguez enjoyed a position of authority within the organization. He, for example, was observed on numerous occasions with Herminio Silva, the suspected supplier of narcotics to the organization. He also agreed to wait for payment from Alejandro Juarez-Santos and he negotiated the price of the cocaine. These transactions demonstrate Palacios-Rodriguez was more than a mere one-time drug seller. See Pitts, 6 F.3d at 1369. Furthermore, the Affidavit contained evidence of the continuing nature of the conspiracy. See e.g. Affidavit at ¶¶ 33-48, 82-83, 136-39, 217-218, 220-221, 249-250, 286-289, 322-336, 492-94. Viewed under the totality of the circumstances, and given the nature of the criminal activity alleged, the evidence in the affidavit was not too old or stale to support a finding of probable cause.

C. Probable Cause

Palacios-Rodriguez argues the Affidavit supporting the search warrant failed to connect the Edmonds Apartment to the alleged criminal activity or the evidence sought. (Df. Br. at 7). The Court disagrees. The record demonstrates that the Affidavit provided a significant amount of evidence that contraband or evidence of a crime would be found at the Edmonds Apartment.

ORDER DENYING DEFENDANT RAMON
PALACIOS-RODRIGUEZ'S MOTIONS TO
SUPPRESS EVIDENCE OBTAINED ON MARCH
28, 2012- 9

The Ninth Circuit has recognized that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990) (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986)). Under the law of this Circuit, the Affidavit's details regarding Palacios-Rodriguez's lengthy involvement in the DTO, including supplying cocaine to others in the conspiracy and participating in other narcotics transactions while living at the Edmonds Apartment, was sufficient basis to believe that contraband might be found at the residence. And, the Affidavit itself offered further reason to believe contraband would indeed be found at the residence: GPS tracking indicated Palacios-Rodriguez's cell phone, which had been used to conduct a narcotics transaction, was regularly tracked to the Edmonds Apartment. Further, Special Agent Miller's statements about the likelihood the Edmonds Apartment would contain contraband or evidence of the crimes charged, which were based on her own professional judgment, combined with the information from the wiretaps, GPS tracker, and officer observations, were sufficient to give the magistrate judge a substantial basis to conclude evidence of the crime could be found at the residence. The Court finds a sufficient nexus between the crimes alleged and the Edmonds Apartment, such that probable cause existed for the issuance of the warrant.

Finding that the search warrant was not defective, the Court does not address the parties' arguments regarding the applicability of the good faith exception.

**Conclusion**

The Court finds that the magistrate had a substantial basis for finding probable cause supported issuance of a search warrant. Therefore, the Court DENIES Defendant Ramon-Palacios' motions to suppress evidence obtained on March 28, 2012. (Dkt. Nos. 584, 662.) The clerk is ordered to provide copies of this order to all counsel.

Dated this 31st day of December, 2012.

                                                                    Marsha J. Pechman
                                                                    Chief United States District Judge

ORDER DENYING DEFENDANT RAMON PALACIOS-RODRIGUEZ'S MOTIONS TO SUPPRESS EVIDENCE OBTAINED ON MARCH 28, 2012- 11